IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION - BOSTON)

| | |
|---|---|
| ROBERT SILVA-PRENTICE and DIONISIO PAULINO,<br><br>     Plaintiffs,<br><br>     -against-<br><br>THOMAS TURCO, CAROL MICI, CHRISTOPHER FALLON, PAUL HENDERSON, CHARLES PRIMACK, STEVEN KENNEWAY, JAMES FERREIRA, PATRICK DEPALO, JOSEPH FREITAS, DEAN GRAY, DAVID SHAW, JAMES ALLAIN, PAUL BIRRI, JASON LANPHER, STUART MCCULLOCH, DENNIS BRESLIN, ROBERT D'AMADIO, JAMES MURPHY, MARK O'REILLY, FNU LAWLESS, RAYMOND TURCOTTE, JEFFREY SOUZA, THOMAS MERLINO, RAYMOND HARVEY, EVAN LARANJO, DANIEL PAUL, JAMIE MARCHAND, ROBERT SOUTHWORTH, KATIE APPEL, MICHAEL THOMAS, BRIAN MULVEY, JENNIFER REDD, and DOES 1 through 20, inclusive,<br>     Defendants. | Civil No. Civil No. 21-cv-11580-PBS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION (ECF 53) TO PARTIALLY DISMISS COMPLAINT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

FACTS .................................................................................................................1

ARGUMENT ......................................................................................................7

I.     THERE IS NO BASIS TO DISMISS COUNTS IV, V, VI, OR X
AGAINST REDD, MULVEY, GRAY, AND FALLON ...................................7

     A.    Counts IV–VI and IX–X Do Not Sound in the Nature of Certiorari ....................7
     B.    Silva-Prentice's Claims are Not Subject to the 60-Day Statute of Limitation
for Certiorari Actions .............................................................................................10
     C.    Even if the Department of Correction Prevails in Paulino's Certiorari Case,
Res Judicata Will Not Bar Paulino's Claims ........................................................11
     D.    There Is No Basis for a Stay................................................................................. 14

II.    PLAINTIFF PAULINO STATES A CLAIM UPON WHICH THIS COURT
MAY GRANT RELIEF AGAINST DEFENDANT LAWLESS AND HAS STANDING
................................................................................................................................... 14

III.   PLAINTIFFS' CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL
CAPACITIES ARE PROPERLY BROUGHT AND SHOULD NOT BE
DISMISSED ......................................................................................................... 16

IV.   PLAINTIFFS' CLAIMS AGAINST THE "JOHN DOE" DEFENDANTS SHOULD NOT
BE DISMISSED BECAUSE THERE IS A REASONABLE LIKELIHOOD DISCOVERY
WILL UNCOVER THEIR TRUE IDENTITIES ........................................................ 18

CONCLUSION...................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Aulson v. Blanchard*, 83 F.3d 1 ............................................................................................ 10

*Bartle v. Berry*, 953 N.E.2d 243 ........................................................................................... 10

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ...................................................... 19

*Brooks v. Comm'r of Correction*, 166 N.E.3d 1022 ................................................................. 8

*Colon v. Coughlin*, 58 F.3d 865 ............................................................................................ 13

*Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976) ............................... 14

*Cox v. Massachusetts Dept. of Correction*, 18 F. Supp. 3d 38 .................................................. 17

*Dantzler, Inc. v. Empresas Berríos Inventory and Operations, Inc.*, 958 F.3d 38 ................ 15, 16

*Degiacomo v. Quincy*, 63 N.E.3d 365 .................................................................................. 12

*Duffy v. Mass. Department of Correction*, 746 F. Supp. 232 ................................................. 9, 11

*Earle v. Benoit*, 850 F.2d 836 .............................................................................................. 9

*Estate of Bennett v. Wainwright*, 548 F.3d 155 ...................................................................... 9

*Ex parte Young*, 209 U.S. 123 .............................................................................................. 17

*Franco v. Kelly*, 854 F.2d 584 .............................................................................................. 12

*Griffin v. Breckenridge*, 403 U.S. 88 .................................................................................... 10

*Hochendoner v. Genzyme Corp.*, 823 F.3d 724 ...................................................................... 14

*Howland v. Kilquist*, 833 F.2d 639 ....................................................................................... 12

*Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1 ......................................................................... 16

*Johnson Products, Inc. v. City Council of Medford,* 233 N.E.2d 316 .......................................... 8

*Lazarre v. Turco*, 18-CV-12260-DJC, 2020 WL 7405733 ......................................................... 18

*Martínez-Rivera v. Ramos*, 498 F.3d 3 ............................................................................ 18, 19

*McLeod v. Dukakis*, CIV.A. 89-0108-S, 1990 WL 180708 ........................................................ 11

*Mole v. Univ. of Massachusetts*, 814 N.E.2d 329 ................................................................... 12

*Murphy v. Supt., MCI Cedar Junction*, 489 N.E.2d 661 ............................................................ 8

*Patsy v. Board of Regents,* 457 U.S. 496 ............................................................................... 11

*Pidge v. Superintendent, MCI–Cedar Junction*, 584 N.E.2d 1145 ......................................... 8, 11

*Seales v. Boston Housing Auth.*, 40 N.E.3d 1046, 1050–51 (Mass. App. Ct. 2015) ..................... 7

*Shabazz v. Cole*, 69 F. Supp. 2d 177 ..................................................................................... 8

*Sowards v. Loudon County,* 203 F.3d 426 .............................................................................. 9

*Spokeo Inc. v. Robins*, 578 U.S. 330 ......................................................................... 14

*Stone v. Caswell*, 963 F. Supp. 2d 32 ...................................................................... 18

*Tetrault v. Mahoney, Hawkes & Goldings*, 681 N.E.2d 1189 ................................. 10

*Thaddeus–X v. Blatter,* 175 F.3d 378 ........................................................................ 9

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 ..................................................... 17

## STATUTES

18 U.S.C. § 3626(g)(7) ............................................................................................ 20

42 U.S.C. § 1983 ............................................................................................... *passim*

42 U.S.C. § 1985 ................................................................................................. 1, 20

Mass. Gen. Laws 249, § 4 .......................................................................................... 8

Mass. Gen. Laws c. 249, § 4 ........................................................................... 7, 8, 12

## REGULATIONS

103 C.M.R. 430.10–430.11 ...................................................................................... 15

103 CMR 430.13–430.16 ......................................................................................... 15

103 CMR 430.18 ....................................................................................................... 15

Plaintiffs Robert Silva-Prentice and Dionisio Paulino oppose Defendants' Motion to Partially Dismiss the Complaint (ECF 53) for the reasons stated below. Defendants' Memorandum in Support of their Motion (at ECF 54) is referred to herein as "Def. Memo."

## FACTS

On September 27, 2021, Plaintiffs filed their Complaint (ECF 1) against Defendants asserting federal and state claims. Plaintiffs assert the following federal claims pursuant to 42 U.S.C. § 1983: cruel and unusual punishment in violation of the Eighth Amendment (Count I); failure to protect and to intervene in violation of the Eighth Amendment (Count II); failure to properly train and supervise in violation of the Eighth Amendment (Count III); retaliation for exercising First Amendment rights in violation of the First Amendment (Count IV); conspiracy to interfere with civil rights (Count V). Compl., ¶¶254 to 325. Plaintiffs also make a claim against Defendants for conspiracy to interfere with civil rights through deprivation of equal protection under the law in violation of 42 U.S.C. § 1985(3) (Count VI). *Id.,* ¶¶326-336. Under Massachusetts law, over which this Court has supplemental jurisdiction, Plaintiffs assert violations of the Massachusetts Civil Rights Act (Count VII), assault and battery (Count VIII), intentional infliction of emotional distress (IX), and civil conspiracy (Count X). *Id*., ¶¶337-370.

All of these claims arise out of the conduct of Defendants in January 2020 and thereafter at Souza-Baranowski Correction Center ("SBCC") in reaction to and in retaliation for an altercation on January 10, 2020, between a group of Black and Latino prisoners and prison staff during which four correctional officers suffered serious injuries. *See* Compl., ¶¶46–49. Plaintiffs were not involved in this altercation, but they and other prisoners suffered severely for it. The backlash was immediate and harsh: the Massachusetts Department of Corrections ("MA DOC") and SBCC administrators joined forces with squads of armed and armored MA DOC officers and

conspired to retaliate against scores of Black and Latino prisoners who had nothing to do with the January 10th altercation, to send a clear message as to who was "in charge" of SBCC, and to instill a sense of terror and fear of future retaliatory attacks on Black and Latino prisoners. Compl., ¶¶51–76.

In furtherance of conspiracies to violate civil rights, target Black and Latino prisoners, and exact revenge, then-Deputy Commissioner Defendant Paul Henderson carefully chose a group of armed and armored officers trained to use weapons and other force on prisoners and ordered them to sneak up on the Plaintiffs' cell (Cell 15) – located in a well-known blind spot – to use "the element of surprise" to gain "a tactical advantage." Compl., ¶¶87–95. As several MA DOC and SBCC administrators directed, authorized, watched and/or listened, Henderson's squad of at least six (6) armed officers wearing paramilitary uniforms and body armor snuck up on and violently entered the Plaintiffs' cell. *Id*., ¶¶96–101. The squad members restrained the Plaintiffs, then proceeded to terrorize, beat, taser, and kick them, pull out their hair, and slam them into concrete walls and a metal doorway while hurling racial, ethnic, and sexual slurs. *Id*., ¶¶102–113. After they concluded their beatings and Silva-Prentice was escorted away, Defendant Mark O'Reilly commanded his dog to attack Paulino, who was cuffed behind his back and under the close escort of two armed officers. *Id*., ¶¶114–117. O'Reilly's dog charged Paulino, ripped off his underwear, bit him in multiple places, and tore away a chunk of his upper thigh and, all the while, DOC and SBCC administrators stood by, watching, listening, and doing nothing to stop the wholly unjustified and violent attack. *Id*., ¶¶118–123, 267.

Paulino was escorted to the SBCC Health Services Unit where the nurse who examined Paulino insisted he be taken to an outside hospital for further treatment. Compl., ¶¶123–124. Paulino was transported to Leominster Hospital where he told hospital staff that he was the victim

of an unjustified attack by MA DOC staff and their attack dog. *Id*., ¶126. Defendant Robert Lawless, a correctional officer that escorted Paulino to the hospital, pulled the hospital staff aside and falsely stated that Paulino had kicked or attempted to kick the attack dog and that Paulino had been involved in an assault on correctional officers at SBCC. *Id*. The false statements that the attack dog attacked Paulino because he had kicked or tried to kick the dog were recorded in Paulino's medical records and were later used against him in a disciplinary proceeding. *Id*., ¶¶126, 244–245, 323. When Paulino later learned of the false information in his medical record, he filed a grievance seeking that it be removed. *Id*., ¶¶127, 245. His grievance was denied and the false statements remain in his medical record. *Id*.

The Defendants well knew that there was no legitimate reason for their surprise, forcible, and violent entry into the Plaintiffs' cell. Indeed, they knew that Paulino and Silva-Prentice had each been safely escorted twice that same day; stripped of all clothing except for t-shirts, boxer shorts, and shower slippers; passed through body scanners; and placed inside a cell that was barren of all property. Compl., ¶¶78–80, 86, 88. The Defendants' true goal was to terrorize and beat the Plaintiffs as payback for the acts of other Latino and Black prisoners and to create an atmosphere of terror. *Id., e.g*., ¶¶56, 59, 67, 331.

When the Plaintiffs dared to complain by filing grievances and a lawsuit, the Defendants expanded the goals of their conspiracy to include retaliation for these First Amendment activities, discrediting the Plaintiffs, and punishing them with, *inter alia*, false charges, baseless guilty findings, and months-long stays in solitary confinement as part of a massive coverup and to ensure such conduct could occur again in the future with impunity. Compl., ¶¶141–253. On January 31, 2020, Paulino and Silva-Prentice each filed a grievance complaining of the unjustified and excessive force used against each of them. *Id*., ¶¶ 143–144. After these grievances were filed, on

February 19, 2020, Defendant O'Reilly wrote a false and retaliatory disciplinary report against Paulino alleging that Paulino threatened and assaulted staff and attempted to kick the attack dog. *Id.*, ¶¶221–222. This first report was dismissed and then a second one (D-report No. 457423) was issued and received by Paulino in early April 2020, accusing him of fifteen disciplinary offenses including aggravated assault on correctional officers during Defendants' storming of Cell 15 along with a charge of "Killing of another." *Id.*, ¶¶223–224. Silva-Prentice likewise received a disciplinary report (D-report No. 455339) only after filing his grievance, a lawsuit in Suffolk Superior Court, and after testifying against MA DOC staff, describing their attacks and other wrongful conduct in January 2020. *Id.*, ¶¶145–147, 153–157, 160, 195–196.

As part of Defendants' conspiracy and retaliation against Paulino for exercising his free speech rights in violation of Paulino's constitutional rights, Defendants falsely accused and found Paulino guilty of aggravated assault and battery in which Defendants Brian Mulvey, Jennifer Redd and Christopher Fallon participated. Compl., ¶¶220–253. Defendant Mulvey in his position as Special Disciplinary Officer (¶37) wrote (along with Defendant Robert D'Amadio) the D-report (No. 457423) accusing Paulino of committing fifteen disciplinary offenses, ten of which carry possible DDU sentences—including the outrageous charge of "Killing of another" (¶224)—and prosecuted this action in which he suppressed exculpatory evidence and unreasonably denied Paulino's reasonable request to call certain witnesses and reasonable requests to other relevant discovery (¶236). Defendant Redd, in her role as Special Hearing Officer (¶38) presided over the disciplinary hearing at which other defendants falsely testified and Redd credited only the correctional officers' testimony and their reports despite independent evidence—video recordings—establishing some of their statements as false. *Id.*, ¶¶235, 242–243, 246. She suppressed exculpatory evidence and unreasonably denied Paulino's reasonable request to call

certain witnesses and reasonable requests to other relevant discovery (¶236), and then found Paulino guilty of aggravated assault and battery despite an utter lack of evidence that Paulino used a weapon, bit anyone, used a shod foot; coordinated an assault with any other person; inflicted any injuries, and displayed no indifference to life (¶238) and found Paulino guilty of "attempting to assault an animal" (¶239) despite Redd reviewing the video recording in evidence clearly showing that the claims by some of the officers that Paulino broke free from his escort and attempted to kick the dog are not true (¶¶240-241). Redd also found "factual" the statements in the medical report made by Defendant Lawless to hospital staff. *Id.*, ¶244. Based on Lawless's false statements, Paulino's medical records state: "Apparently, the patient was being let out of his cell and a canine was positioned outside of the cell. The patient attempted to kick the dog while walking past. The dog took exception and bit his left leg, causing the patient to fall and hit his head on the ground." *Id.* While Paulino filed a grievance to remove these false statements from his medical record, the grievance was denied and not considered by Defendant Redd at the disciplinary hearing and she credited the false medical report instead. *Id.*, ¶245. Redd found Paulino guilty and sentenced him to eighteen (18) months in solitary confinement with nine (9) months credit and nine (9) months to serve. *Id.*, ¶¶247, 299. In furtherance of this conspiracy to retaliate against Paulino for his First Amendment activities and coverup the Cell 15 squad's unconstitutional, immoral, and criminal behavior inside Cell 15, Defendant Fallon, as the Deputy Commissioner of Prisons (¶9) then denied Paulino's appeal of the disciplinary finding by Redd despite overwhelming evidence of Paulino's innocence and equally overwhelming evidence that other defendants testified falsely and wrote false reports. *Id.*, ¶¶250, 301, 319. Paulino served thirteen months in solitary confinement as part of the Defendants' retaliation and conspiracy to cover up their own wrongdoing, during which he was refused confidential attorney calls, he lost significant weight, remained in fear of

further retaliation by MA DOC staff, and developed severe depression as a result of the trauma inflicted by the Cell 15 squad. *Id*., ¶¶251–253.

As part of their conspiracy and retaliation against Silva-Prentice for exercising his free speech rights in violation of Silva-Prentice's constitutional rights, Silva-Prentice was also falsely accused and found guilty of assaulting a correction officer in which Defendants Mulvey, Redd, and Defendant Dean Gray participated. Defendant Mulvey in his position as Special Disciplinary Officer (¶37) wrote (along with Defendant James Allain) the D-report (No. 455339) accusing Silva-Prentice of committing several of the most serious disciplinary offenses, including aggravated assault on an officer (without naming or in any way identifying the alleged victim), which carry the possibility of a punitive sentence of up to ten years in a punitive solitary confinement unit, (¶¶195–196, 200), suppressed exculpatory evidence (¶201), unreasonably denied Silva-Prentice's request to call certain witnesses, including the purported victim of his alleged aggravated assault on a correction officer, and to discover relevant evidence (¶202). Mulvey also ignored uncontradicted forensic and expert evidence proving that Defendants Allain and Breslin lied in their reports and in their sworn hearing testimony, proving Silva-Prentice's innocence of the charges. *Id.*, ¶¶204–205. Defendant Redd in her role as Special Hearing Officer (¶38) presided over the disciplinary hearing at which she suppressed exculpatory evidence (¶201), unreasonably denied Silva-Prentice's request to call certain witnesses, including the purported victim of his alleged aggravated assault on a correction officer, and to discover relevant evidence (¶202), ignored uncontradicted forensic and expert evidence proving that Defendants Allain and Breslin lied in their reports and in their sworn hearing testimony proving Silva-Prentice's innocence of the charges (¶¶204–205), and found Silva-Prentice guilty of assaulting a correction officer, placing him in solitary confinement for approximately five months (¶¶194, 205–206, 299).

In furtherance of this retaliatory conspiracy and coverup, Defendant Gray denied Silva-Prentice's appeal despite the overwhelming evidence of his innocence and that Defendants Allain and Breslin testified falsely and that other defendants made false reports that Silva-Prentice assaulted correctional officers when really Silva-Prentice was the victim of assault. *Id.*, ¶¶16, 207, 300, 319.

On January 26, 2020, Paulino filed a complaint for certiorari review in Suffolk Superior Court, amended on April 28, 2020. The only legal issue raised in his complaint is whether the disciplinary guilty findings against him are supported by substantial evidence.

## ARGUMENT

## I. THERE IS NO BASIS TO DISMISS COUNTS IV, V, VI, IX, OR X AGAINST REDD, MULVEY, GRAY, AND FALLON

In their Memorandum in support of their Motion to Dismiss, Defendants Redd (the special hearing officer who entered guilty findings against Silva-Prentice and Paulino), Mulvey (who prosecuted the disciplinary charges against Plaintiffs), Gray (who sustained the appeal from the guilty finding as to Silva-Prentice), and Fallon (who sustained the appeal from the guilty findings as to Paulino) move to dismiss Counts IV, V, VI, IX and X, arguing that the exclusive remedy for those claims lies in the nature of certiorari, which are therefore governed by Mass. Gen. Laws c. 249, § 4 ("Chapter 249"). Def. Memo. 4–9. Defendants are wrong for the reasons set forth below.

### A. Counts IV–VI and IX–X Do Not Sound in the Nature of Certiorari.

Under Massachusetts law, the purpose of a civil action in the nature of certiorari is to relieve aggrieved parties from the injustice created by substantial errors of law when no other means of relief are available. *Seales v. Boston Housing Auth.*, 40 N.E.3d 1046, 1050–51 (Mass. App. Ct. 2015), *rev. denied*, 473 Mass. 1115 (2016); *see also* Mass. Gen. Laws c. 249, § 4 (action in nature of certiorari is appropriate vehicle "to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by

motion or by appeal"); *Johnson Products, Inc. v. City Council of Medford,* 233 N.E.2d 316, 318 n.2, *cert. denied,* 392 U.S. 296 (Mass. 1968) (writ of certiorari is "'to correct errors of law committed by a judicial or quasi-judicial tribunal where such errors ... are so substantial and material that, if allowed to stand, they will result in manifest injustice'"). Civil actions filed under Chapter 249 must be filed within 60 days of the last administrative action at issue. *Brooks v. Comm'r of Correction*, 166 N.E.3d 1022, 1023–24 (Mass. App. Ct. 2021).

It is well established that "improprieties in prison disciplinary proceedings under State law must proceed by way of an action in the nature of certiorari." *Pidge v. Superintendent, MCI–Cedar Junction*, 584 N.E.2d 1145, 1148 (Mass. App. Ct. 1992) (holding that prisoner's claims that prison officials failed to comply with regulations during prison disciplinary systems and violated procedural due process sound in certiorari under Chapter 249). *See also Shabazz v. Cole*, 69 F. Supp. 2d 177, 188, 190–191, n.7 (D. Mass. 1999) (Bowler, M.J.) (holding that prisoner's claims alleging insufficient evidence to support guilty finding and improper exclusion of witnesses and testimony should have been raised in state certiorari action).[1]

At the same time, not all claims relative to a prison disciplinary proceeding are governed by Chapter 249. For example, claims for damages or violations of substantive constitutional rights fall outside the scope of a certiorari complaint. *Pidge*, 584 N.E.2d at 1148–49 (reversing dismissal of §1983 claims for damages and injunctive relief related to handling of disciplinary case); *Shabazz*, 69 F.Supp.2d at 190 n.7 (distinguishing prisoner's §1983 civil rights claims alleging violations of First Amendment and other substantive constitutional rights from counts sounding in

---

[1]    Where a prisoner files a certiorari action to challenge the sufficiency of evidence, he must show that a guilty disciplinary finding is not based on "substantial evidence." *Murphy v. Supt., MCI Cedar Junction*, 489 N.E.2d 661, 662–63 (Mass. 1986).

certiorari); *Duffy v. Mass. Department of Correction*, 746 F. Supp. 232, 233–234 (D. Mass. 1990) (Young, J.) (distinguishing certiorari action from Section 1983 claim).

Here, Defendants' motion to dismiss Counts IV–VI and IX–X is necessarily dependent upon the notion that they "clearly" sound in certiorari. They do not. Rather, Counts IV–VI allege violations of substantive constitutional rights in violation of 42 U.S.C. § 1983 and Counts IX and X allege the intentional torts of infliction of emotional distress and civil conspiracy. *See* Compl., Counts IV (alleging First Amendment retaliation in violation of 42 U.S.C. §1983),[2] V (alleging conspiracy to violate civil rights in violation of 42 U.S.C. § 1983),[3] VI (alleging conspiracy to

---

[2]  To state their claim for First Amendment retaliation, Plaintiffs alleged sufficient facts to show that "(1) [they] engaged in protected conduct; (2) an adverse action was taken against [theme] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Sowards v. Loudon County,* 203 F.3d 426, 431–434 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000), quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (en banc). More specifically, Plaintiffs allege that after they filed grievances and a lawsuit, Defendants retaliated by, *e.g.*, prosecuting the false disciplinary charges, knowingly making and relying upon false representations, offering and knowingly relying upon false testimony, finding them guilty based on perjured testimony and discredited evidence, and affirming such findings knowing that they were issued for the improper purpose of covering up the Cell 15 squad's unconstitutional, immoral, and criminal behavior. Compl., ¶¶291–308.

[3]  To state their claim that Defendants conspired to violate their civil rights, Plaintiffs alleged sufficient facts to show "'a combination of two or more persons acting in concert to commit an unlawful act ... the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another.'" *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008) (quoting *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988)). More specifically, Plaintiffs allege that Defendants acted in concert to use unjustified and excessive force and to cover up the assaults on Plaintiffs through false incident reports, false disciplinary charges, and to retaliate. Compl., ¶¶ 310–311, 317–318, 325.

violate equal protection rights in violation of 42 U.S.C. § 1985),[4] IX (alleging intentional infliction of emotional distress),[5] and X (alleging civil conspiracy).[6]

## B. Silva-Prentice's Claims are Not Subject to the 60-Day Statute of Limitation for Certiorari Actions.

Building on their erroneous claim that Counts IV to VI and IX to X are governed exclusively by the Massachusetts certiorari statute, Defendants claim that Silva-Prentice's claims are untimely because he did not file suit within the 60-day period specified in Mass. Gen. Laws c.

---

[4]     To state their claim for conspiracy to violate their equal protection rights, Plaintiffs alleged sufficient facts to show "a conspiracy; … a conspiratorial purpose to deprive [them] of the equal protection of the laws; … an overt act in furtherance of the conspiracy; and …injury to person or property, or a deprivation of a constitutionally protected right" regarding 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). More specifically, Plaintiffs allege that Defendants acted in a preplanned and coordinated effort to put Plaintiffs in a cell off view from cameras and then charge in, beat, and tase Plaintiffs, use K-9s to threaten and instill fear in both Plaintiffs, attack the Plaintiffs, and then continued their conspiracy to deprive Plaintiffs of their constitutional rights by coordinating to fabricate their incident reports and disciplinary tickets against Plaintiffs. Compl., ¶¶326–336.

[5]     To state their claim for intentional infliction of emotional distress, Plaintiffs alleged sufficient facts to show that "(1) the defendant[s] intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, but also (2) that the defendant[s]'s conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant[s] were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." *Tetrault v. Mahoney, Hawkes & Goldings*, 681 N.E.2d 1189, 1197 (Mass. 1997) (citations omitted). More specifically, Plaintiffs allege that Defendants participated in a conspiracy whereby they arranged and executed this beating and cover-up which included sending Plaintiffs to solitary confinement based on false allegations that each of them had assaulted the correctional officers involved when, in fact, it was the officers who were the assailants. Compl., ¶¶359–365.

[6]     To state their claim for civil conspiracy, Plaintiffs alleged sufficient facts to show "an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement." *Bartle v. Berry*, 953 N.E.2d 243, 253 (Mass. App. Ct. 2011), *rev. denied*, 460 Mass. 1116 (2011). More specifically, Plaintiffs allege that Defendants, *inter alia*, acted in concert to use unjustified and excessive force and to cover up their assault of SILVA-PRENTICE and PAULINO through false incident reports, false disciplinary tickets, and false testimony and retaliation," all in violation of Plaintiffs' First and Eighth Amendment rights. Compl., ¶¶ 367–368.

249, § 4. MTD Memo. at 8–9. Because his claims are not in the nature of certiorari, however, Silva-Prentice's claims are subject only to the 3-year statute of limitations applicable to Section 1983 actions. *Pidge*, 584 N.E.2d at 1148–49. Defendants' arguments to the contrary are downright frivolous. *Duffy*, 746 F. Supp. at 234 (deeming "frivolous" MA DOC's argument that Section 1983 claims based on procedural and substantive due process claims were barred by 60-day time limit set forth in Mass. Gen. Laws c. 249, § 4). *See also McLeod v. Dukakis*, CIV.A. 89-0108-S, 1990 WL 180708, at *1–2 (D. Mass. Nov. 2, 1990) (Skinner, J.) (citing *Patsy v. Board of Regents,* 457 U.S. 496, 500–501 (1982)) (denying motion to dismiss claims as barred by the statute of limitations in Mass. Gen. Laws c. 249, § 4, holding defendant properly filed within three years and that plaintiff was "not required to bring a state action in the nature of certiorari prior to filing this § 1983 complaint" because exhaustion of state administrative remedies "is not a prerequisite to an action under § 1983").

## C. Even if the Department of Correction Prevails in Paulino's Certiorari Case, Res Judicata Will Not Bar Paulino's Claims.

Still dependent upon their frivolous arguments that the counts at issue sound only in certiorari, Defendants also argue for a stay, claiming that if the Department of Correction prevails in Paulino's pending certiorari case, "all the D-report claims in the case at bar automatically fail because there will be conclusive findings of a state court that there was sufficient evidence to prove that Paulino did, in fact, violate the rules/regulations of the prison in relation to the D-reports[.]" Def. Memo. 5. Defendants are wrong.

The term "res judicata" is a generic one and consists of both "claim preclusion" and "issue preclusion." For present purposes, Paulino presumes that Defendants meant to invoke the doctrine of issue preclusion, which "'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or

[parties in privity with the same parties].'" *Degiacomo v. Quincy*, 63 N.E.3d 365, 369 (Mass. 2016) (citations omitted). To avail themselves of the doctrine of issue preclusion, Defendants must first show that "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication[.]" *Id.*

Here, Defendants' issue preclusion claim must necessarily fail because there has been no judgment in Paulino's state court certiorari action, due at least in part to the Department of Correction's frivolous pursuit of a gag order and sealing of plainly public documents. *See* ECF 54-1, Defendants' Exhibit 1 (state court docket) at Dkt. Nos. 7, 10, 16. As such, any effort to invoke issue preclusion at this point is premature.

Further, notwithstanding the reference to a conspiracy in Paulino's one-count certiorari complaint, the only legal issue raised in that action is whether the guilty disciplinary findings are sustained by substantial evidence. *See* Defendant's Exhibit 2 at ECF 54-2 (Paulino's First Amended Complaint in Suffolk Superior Court). Even if the Department of Correction were to prevail on the question of substantial evidence, it is well established that "an act in retaliation for the exercise of constitutional right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987); *see also Mole v. Univ. of Massachusetts*, 814 N.E.2d 329, 345–46 (Mass. 2004) (for First Amendment retaliation, plaintiff must prove, inter alia, that "the adverse action was motivated at least in part by the plaintiff's protected conduct") (citation omitted); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988) (latitude afforded to prison officials "does not encompass conduct that infringes on an inmate's substantive constitutional rights" and an "act in retaliation for the exercise of a

constitutional right is actionable under Section 1983 even if the act, when taken for other different reasons, would have been proper") (citation omitted). Thus, if Defendants took disciplinary action against Paulino at least in part for his exercise of constitutional rights or another improper purpose, the existence of substantial evidence is not a bar to recovery.

Further, the state court's inquiry is necessarily limited by the scope of the administrative record, the contents of which is almost entirely within the control of Defendants Mulvey and Redd, as well as the Department of Correction. Indeed, as the disciplinary officer, it was up to Mulvey to decide whether to pursue the disciplinary report against Paulino, to turn over exculpatory evidence, and to make preliminary determinations as to witnesses and evidence, 103 C.M.R. 430.10–430.11; it was up to Redd to assure her impartiality and to decide definitively which witnesses could be called and the scope of their testimony, to weigh the credibility of witnesses, and to make findings of fact, 103 CMR 430.13–430.16; and up to Fallon to decide whether Mulvey and Redd complied with their regulatory obligations, 103 CMR 430.18.[7]

Where Defendants strictly control what goes into the administrative record, a finding of substantial evidence on that limited administrative record sheds little to no light on whether Defendants, *e.g.*, conspired to retaliate for First Amendment activity by issuing a false disciplinary report which would not have otherwise been issued or acted with any other improper purpose in prosecuting, hearing, or sustaining the disciplinary charges against Paulino. *Colon v. Coughlin*, 58 F.3d 865, 869–871 (2d Cir. 1995) (refusing to apply claim preclusion to bar prisoner's Section 1983 retaliation claim on basis that state court upheld disciplinary finding and determined disciplinary charges not motivated by retaliation because, *inter alia*, prisoner alleged that hearing officer was biased and also precluded him from introducing relevant evidence).

---

[7]      Although Defendant Gray joined this argument, he had nothing to do with Paulino's disciplinary case.

**D. There Is No Basis for a Stay.**

Lastly, Defendants claim that a stay is appropriate so that the state court has time to rule on Paulino's certiorari action. Def. Memo. at 6–7 (citing *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976)). There is no need for a stay, however, for the same reason that Defendants are unable to avail themselves of issue preclusion should the certiorari action resolve in their favor, specifically, because any such favorable ruling is not a bar to Paulino's constitutional and intentional tort claims given the limitations of the administrative record and the lack of identity of issues.

## II. PLAINTIFF PAULINO STATES A CLAIM UPON WHICH THIS COURT MAY GRANT RELIEF AGAINST DEFENDANT LAWLESS AND HAS STANDING

The Court should not dismiss Count V against Defendant Lawless. Paulino has met the three-part, threshold showing that he has standing for his claims against Lawless (1) that he has suffered an injury in fact, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable judicial decision. *See Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact is one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" for the purposes of finding standing. *Id.* at 339. Particularized injuries must affect the plaintiff in a personal and individual way. *Id.* at 339. Concrete injuries "must actually exist" under the "usual meaning of the term"—a "bare procedural violation" divorced from actual harm lacks sufficient concreteness. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (citing *Spokeo*, 578 U.S. at 340–41). These are distinct requirements. *Id.*

Defendants' argument that Paulino "makes no valid claim" that Lawless's false statements caused Paulino harm (Def. Memo. 10) ignore the clear allegations in the complaint. As cited above, Paulino alleges that Lawless made false statements to hospital staff that were entered in Paulino's

medical record in furtherance of the Defendants' conspiracy to retaliate and coverup their own wrongdoing in violation of Paulino's civil rights. Compl., ¶¶126, 127, 244–245, 323. These false statements then became material evidence used against Paulino in a disciplinary proceeding. *Id.* Paulino specifically alleges that in her findings after the disciplinary hearing, Defendant Redd "found 'factual' the statements in the medical report made by LAWLESS to hospital staff" which reflected, based on Lawless's false statements that "[a]pparently, the patient was being let out of his cell and a canine was positioned outside of the cell. The patient attempted to kick the dog while walking past. The dog took exception and bit his left leg, causing the patient to fall and hit his head on the ground." *Id.*, ¶244. Defendant Redd thus used Lawless's false statement to the hospital staff from the medical report to find Paulino guilty of attempted assault on an animal. *Id.*, ¶¶ 244, 245, 247. As a result of the guilty finding in part caused by Lawless's false statement, Paulino served thirteen months in solitary confinement during which he was refused confidential attorney calls, he lost significant weight, remained in fear of further retaliation by staff, and developed severe depression. *Id.*, ¶¶251–253. This is not vague; this is a concrete harm suffered by Paulino.

Moreover, the injury caused by Lawless is fairly traceable to his conduct in making the false statements which were included in the medical record when Paulino was in need of serious medical assistance after the brutal assault by Defendants. While "[t]he Supreme Court has cautioned against courts finding that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a causal chain dependent on actions of third parties," the injury here is direct. *See Dantzler, Inc. v. Empresas Berríos Inventory and Operations, Inc.*, 958 F.3d 38, 48 (1st Cir. 2020). Paulino has not alleged a "bare hypothesis" but provides sufficient "factual matter" to make clear the causal relationship between Lawless's false statements and the injuries that followed. *See id.* at 49. Lawless lied to hospital staff to prevent them from recording Paulino's

own account of the attack on himself and on Silva-Prentice. Compl., ¶¶126–127. There is a direct link from Lawless "correcting" Paulino's telling of events to cast Paulino as an aggressor to Lawless's statements being used against Paulino to discipline him when the medical record would have otherwise reflected Paulino's true and accurate telling of the cause of his injuries. Defendant Redd's reliance on the medical report is fairly traceable to Lawless's lies to the staff that caused them to discount Paulino's own report of the cause of his injuries.

Paulino has properly alleged "that a favorable resolution of [his] claim would likely redress the professed injury," and that it is not "merely speculative that, if a court grants the requested relief, the injury will be redressed" through compensatory damages pursuant to 42 U.S.C. § 1983, punitive damages to the extent proper, and equitable relief including expungement of his disciplinary record. *Compare* Compl., ¶¶ 323, 325 *with Dantzler*, 958 F.3d at 47.

The motion to dismiss Paulino's claims against Defendant Lawless should be denied.

## III. PLAINTIFFS' CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE PROPERLY BROUGHT AND SHOULD NOT BE DISMISSED

Section 1983 provides for a private right of action against individuals whose actions under color of state law resulted in the deprivation of rights guaranteed by the Constitution or federal law. *Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1, 7 (1st Cir. 2015). There is no dispute that Defendants, in their official capacities, are state officials in their positions employed by MA DOC.

Plaintiffs have stated claims for relief against Defendants in their official capacities that are not barred by Eleventh Amendment sovereign immunity.[8] A state official in his or her official

---

[8] Notably, neither the Commonwealth nor its agencies are named defendants in this suit; the Eleventh Amendment and the abstention doctrines from *Ex parte Young* would bar Plaintiffs from seeking such relief. *See Poirier v. Massachusetts Dept. of Correction*, 558 F.3d 92, 97 n.6 (1st Cir. 2009) ("A plaintiff may seek prospective injunctive relief against a state official but may not obtain

capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989). Plaintiffs state claims for prospective injunctive relief against Defendants in their official capacities as well as for monetary relief in their individual capacities. As Defendants acknowledge (Def. Memo. 10), the Eleventh Amendment permits suits under § 1983 for prospective relief against state officials sued in their official capacities, and only "bars retroactive monetary relief." *Cox v. Massachusetts Dept. of Correction*, 18 F. Supp. 3d 38, 47 (D. Mass. 2014) (citing *Ex parte Young*, 209 U.S. 123, 168 (1908)). Under the Prison Litigation Reform Act, "the term 'prospective relief' means all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). Plaintiffs pray for prospective injunctive relief against state officials, which can only be obtained by suing them in their official capacities. *See*, Plaintiffs Ninth and Tenth Prayer for Relief:

> Plaintiffs SILVA-PRENTICE and PAULINO respectfully demand relief as follows: . . .
>
> 9. Equitable remedies including ordering that: the disciplinary record of SILVA-PRENTICE be expunged of the guilty finding of assaulting a correction officer and that the disciplinary record of PAULINO be expunged of the guilty finding of aggravated assault on a correctional officer and of attempted assault on a DOC attack dog. [and]
>
> 10. Such other and further relief at law or in equity to which the Plaintiffs may be justly entitled.

Compl., pp. 91–92; *see also*, Compl., ¶¶274, 280, 290, 308, 325, 336 (seeking equitable relief under each separate Count I through VI, the Section 1983 and Section 1985 claims).

This is not a demand for monetary relief based on past harms but is instead a form of injunctive relief that the Court could impose on the defendants in their official capacities to direct

---

such relief against a state or its agency because of the sovereign immunity bar of the Eleventh Amendment").

future conduct. *See Lazarre v. Turco*, 18-CV-12260-DJC, 2020 WL 7405733, at \*6 (D. Mass. Dec. 17, 2020) (Casper, J.) ("Lazarre's complaint seeks both monetary damages and equitable relief . . . Thus, to the extent Lazarre seeks equitable relief against [DOC Defendants] Mici and Kennedy in their official capacities, he may maintain his claims."); *Stone v. Caswell*, 963 F. Supp. 2d 32, 37 (D. Mass. 2013) (Gorton, J.) (where plaintiff sought prospective equitable relief in the form of an injunction prohibiting future misconduct, against those defendants for any actions taken in their official capacity, "[r]ecovery of such prospective relief, and attorneys' fees, is permissible.").

Plaintiffs' claims against Defendants in their official capacities under Section 1983 should not be dismissed.

## IV. PLAINTIFFS' CLAIMS AGAINST THE "JOHN DOE" DEFENDANTS SHOULD NOT BE DISMISSED BECAUSE THERE IS A REASONABLE LIKELIHOOD DISCOVERY WILL UNCOVER THEIR TRUE IDENTITIES

The Court should not dismiss the "John Doe" defendants because Plaintiffs cannot know the names of those other defendants at this time despite good-faith efforts to ascertain their identities. In the First Circuit, "as a general matter a plaintiff may bring suit against a fictitious or unnamed party where a good-faith investigation has failed to reveal the identity of the relevant defendant and there is a reasonable likelihood that discovery will provide that information." *Martínez-Rivera v. Ramos*, 498 F.3d 3, 8 (1st Cir. 2007). Here, the plaintiffs, through their counsel, have made diligent, good-faith efforts to determine the parties culpable for their mistreatment, from the initiation of SBCC's lockdown through the disposal of their disciplinary hearings but there are involved parties seen on video recordings and referred to in documents that have not yet been identified. While "plaintiffs are already apparently in possession of many documents and videos concerning their claims," the civil discovery process is the only "realistic means of obtaining the information" to identify those other wrongful actors who should be subject to liability. *Cf.* Def. Memo. 11 (making the unsupported assertion that Plaintiffs have enough

evidence to identify those who harmed them), *with Martínez-Rivera*, 498 F.3d at 8 n.5 (citing *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)) (asserting the need for the civil discovery process to uncover otherwise hidden identities). Plaintiffs will act promptly to substitute the correct parties for the yet-unnamed John Does, because there is a reasonable likelihood that discovery will reveal the identities of the yet-unnamed defendants.

Alternatively, Plaintiffs reserve their right to move to amend and join additional parties, if determined necessary when identified, pursuant to the deadlines of the Court's Scheduling Order once issued.

## CONCLUSION

Defendants' Motion to Partially Dismiss Complaint (ECF 53) should be denied in its entirety.

Dated: February 7, 2022        Respectfully submitted,

*/s/ Patricia A. DeJuneas*
Patricia A. DeJuneas (BBO #652997)
DeJuneas Law LLC
One Commercial Wharf West
Boston, MA 02110
Tel: (617) 529-8300
Fax: (617) 742-8604
patty@dejuneaslaw.com
*Counsel for Plaintiff Robert Silva-Prentice*

*/s/ Bridget A. Zerner*
Bridget A. Zerner (BBO #669468)
Markham Read Zerner LLC
One Commercial Wharf West
Boston, MA 02110
Tel: (617) 523-6329
Fax: (617) 742-8604
bzerner@markhamreadzerner.com
*Counsel for Plaintiff Dionisio Paulino*

## Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 7, 2022.

*/s/ Bridget A. Zerner*
Bridget A. Zerner